LEATHERBERRY *v.* ODELL, RAGAN & Co.

(*Circuit Court, W. D. North Carolina.* ———, 1880.)

1. MASTER AND SERVANT—CONTRACT OF SERVICE—DISCHARGE.

Where one servant violates or fails to comply with any express or implied condition of the contract of service, which results in material injury to the business of the master, or which amounts to insubordination or disregard of his feelings and proper authority, the contract may be determined before the expiration of the term of service.

2 SAME—SAME—SAME.

There is an implied contract upon the part of a servant that she is competent to discharge the duties for which she was employed, and a breach of such contract will, therefore, warrant her discharge before the term of service has expired

3. SAME—SAME—SAME.

Such discharge is also justifiable where the disposition and deportment of the servant is such as to seriously injure the custom and business of the master.

4. SAME—SAME—SAME.

. But slight discourtesies, hasty words, and occasional exhibitions of irritation, or even ill temper, are not sufficient cause for a discharge where there are many petty causes for annoyance and irritation in such business.

5. SAME—DISCHARGE—DAMAGES.

If the master, without sufficient cause, discharges the servant before the expiration of the term, the *prima facie* measure of damages is the amount which she would have received had the contract of service been fulfilled.

6. SAME—SAME—SAME.

The master, however, may show in mitigation of damages that during the balance of the unexpired term she received other similar employment, or might have received such employment by proper efforts.

7. SAME—SAME—SAME.

She is required in such case, however, only to have used reasonable diligence in obtaining employment in business of the same kind, or similar to that mentioned in the contract.

8. SAME—BREACH OF CONTRACT—CONDONATION.

If there has been an actual forgiveness of a breach of contract on the part of a master to a defaulting servant, he cannot afterwards rely upon such breach in discharging the servant; but such condonation can in no respect extend to subsequent offences, or to a continued deficiency.

9. SAME—SAME—SAME.

Such breach is *prima facie* condoned by the continued retention of the servant, but the question is one of fact, to be determined by a jury.—[ED.

Action to recover damages for the breach of a special contract.

*Ruffin, Pannill & King,* for plaintiff.

*Montgomery & Staples,* for defendants.

DICK, D. J., (*charging jury.*) From the large number of ladies and gentlemen who have been in attendance on the court during the progress of this trial, it is evident that this case has excited considerable public interest. The trial has consumed much time, but not more than was necessary to develop the merits of the case. The testimony, in many particulars, is various and contradictory, but the counsel in

their arguments have shown consummate skill in marshalling and arraying on both sides the mass of conflicting evidence in as lucid a manner as was possible.

I will not attempt to rehearse the evidence, as my notes are not full, and I would have to depend upon my memory. Under such circumstances, if I were to attempt to repeat the evidence, I would naturally arrange and present it in the order in which it has operated upon my mind, and I would thus, unintentionally, indicate my opinion, and in some degree influence your verdict. I desire to leave all questions of fact to your determination, unbiased by any intimations of the court. As the counsel in their arguments have so ably and elaborately presented the rights of their clients, I hope you will be able to arrive at correct conclusions, and render a just verdict. The principles of law involved in this controversy are plain and simple, are founded in reason and justice, and are well established by adjudications in the courts.

The plaintiff alleges that she entered into a special contract with the defendants to serve them as a superintendent, and as a cutter and fitter, in a ladies' dress-making establishment in the city of Greensboro, for the entire term of one year, at the sum of $600, payable in monthly instalments of $50; and the defendants engaged also to pay for her board, lodging, and washing, and her traveling expenses to and from Baltimore, and her traveling expenses to be incurred in two visits to her home during the year of her employment; and the defendants, without any sufficient cause, dismissed her from their employment at the end of three months.

In the complaint there is no common count for work and labor performed, and it is conceded that she received payment for services performed, for board and washing for three months, and also her traveling expenses from Baltimore.

It is incumbent on the plaintiff to prove by a preponderance of testimony the material allegations in her complaint which are denied in the answer. If she has proved to your satisfaction that she entered into a contract with the defendants to serve them one year upon the terms set forth in her

complaint, and that she was able, ready, and willing to perform her part of the contract, then, nothing else appearing, she would be entitled to recover the amount she would have received had she remained in the employment of the defendants, to-wit: The wages for nine months, at $50 per month; her board and washing for nine months, at $22 per month; and her traveling expenses ($17) in returning to Baltimore. She is not entitled to recover the amount which would have been expended in her two promised and anticipated visits to her home during the year of'service.

On the other hand, if the plaintiff has failed in making out her case, or if the defendants have satisfied you, by testimony, that no such special contract as that alleged by the plaintiff was entered into by them, but the contract with the plaintiff was for her services only so long as such services were satisfactory to them, then that finding would determine the case, as the plaintiff can only recover upon the special contract alleged in her complaint.

And, again, if you find that there was a special contract as alleged, and the defendants have satisfied you by the evidence that they had good and sufficient cause to discharge the plaintiff from their employment before the expiration of the term of service, then you should find a verdict for the defendants, as they were bound by their contract to keep the plaintiff in their employment only so long as she properly performed her part of the said contract.

What constitutes sufficient cause for avoiding a special contract of service is a mixed question of law and fact. The court must inform the jury what statements in the testimony, if ascertained by the jury to be facts, will or will not constitute sufficient cause of dismissal from service, and I will now proceed to perform this part of my duty.

The plaintiff alleges that she entered into the service of the defendants as a superintendent of a ladies' dress-making establishment, and as a cutter and fitter of ladies' dresses. Now, if you should find that she was unskilful and wanting in the taste usual in such employment, or that she was not faithful and diligent in her duties, then the court charges

you that there was sufficient cause for her dismissal from the services of the defendants; for there was an implied contract on her part that she was competent to discharge the duties for which which she was employed, and possessed the requisite skill and taste of arrangement usual in such business.

The plaintiff, in reply to the allegations of the defendants in their answer, says that she did not engage in her special contract to perform the service of a competent and skilful cutter and fitter of ladies' cloaks, and that such employment is a separate and distinct business from that which she engaged to perform. She also says that, after she had entered upon the performance of her special contract, she did, at the request of the defendants, cut and fit some ladies' cloaks in a manner that ought to have been satisfactory to customers, and she insists that, even if such work was not satisfactory, it was not sufficient cause for a dismissal from the services specified in her contract, and which she had performed with proper diligence and skill. If you should find from the testimony that the cutting and fitting of ladies' cloaks is a separate and distinct business, and was not embraced in the alleged special contract, then I charge you that the failure to perform properly this extra service would not justify her dismissal from the employment which she had undertaken in the contract.

If you should be satisfied from the testimony offered by the defendants that the plaintiff engaged to serve them as a cutter and fitter of ladies' cloaks, then a similar contract was implied to that above stated as to a cutter and fitter of ladies' dresses; and if she failed or was incompetent to perform such implied contract, then the defendants were warranted in an entire discharge from their service.

If you should find that the plaintiff's disposition and general deportment towards customers and other employes seriously affected the custom and business of the defendants in her department, then the discharge from service was justifiable. But slight discourtesies, hasty words, and occasional exhibitions of irritation or even ill temper were not sufficient

cause, as these manifestations are natural and not unfrequent in a business where there are many whims and caprices, much diversity of taste and opinion, and so many petty causes for annoyance and irritation.

As the plaintiff, in performing her contract, had to deal principally with lady customers of various tastes and temperaments, I think that such dealings ought to be received with reasonable forbearance and allowance, and ought not to be judged by the rigid rules that are properly applicable to the actions of men in the calm and ordinary business transactions of life. The well-known usages and experiences of society in such matters ought to be recognized, and in some degree allowed and respected, unless they produce serious injury to business interests.

The mere failure of the business experiment which the defendants had just undertaken, and from which they had not realized anticipated profits, did not justify them in discharging the plaintiff unless her want of competency, skill, and general fitness for the position she occupied contributed materially to such failure.

On the subject which we are considering no specific general rule can be framed applicable to all cases which may arise. Each case must in some degree be governed by its own peculiar circumstances. The nearest approximation to a general rule is: where an employe violates or fails to comply with any express or implied condition of the contract, which results in material injury to the business of the employer, or amounts to insubordination or disregard of his feelings and proper authority, the contract may be determined before the expiration of the term of service.

I have already stated that if the special contract was made as alleged, and the defendants without sufficient cause discharged the plaintiff from their service before the expiration of the term of employment, the *prima facie* measure of damages is the amount which she would have received had the contract been fulfilled. As she did not actually perform the services stipulated in the contract, the defendants may show in mitigation of damages that during the balance of

the unexpired term she received other similar employment, or might have received such employment by proper efforts; as she is only entitled to actual loss from the breach of the contract, and cannot recover for loss which might have been prevented by reasonable diligence. A discharged servant cannot lawfully spend the balance of an unexpired term of service in idleness and sloth, but must use reasonable efforts to relieve the employer from damage and loss.

This question of reasonable diligence is a question of fact for the jury, and the burden of proof is upon the defendants, as they must rebut the *prima facie* presumption in favor of the plaintiff. She is required only to have used reasonable diligence in obtaining employment in business of the *same kind, or similar to that mentioned in the contract.* You have heard the evidence of the defendants upon that subject, and, if satisfactory, you can mitigate the damages to the extent of the damages actually received by the plaintiff during the unexpired term, or such as might have been received by proper effort in seeking employment.

The plaintiff further insists that the defendants, in express terms, agreed to receive her into their employment *at their own risk,* after she had told them that she might not suit them, and that, therefore, there was no implied contract on her part that she possessed the degree of skill, knowledge, and experience requisite to discharge the duties of the position which she had accepted, and to perform in a highly satisfactory manner the service she had entered upon. It appears in evidence that, at the time the contract was made, she was engaged in such service in the city of Baltimore, and in the usual manner was publicly seeking custom in that line of business. By so doing she represented herself to the public as being skilled and qualified in that employment, and the defendants had a right to suppose that such representations were, in most respects, to be relied upon. If they took her at their own risk, they could not refuse to pay her for services actually performed, although unskilful and unsatisfactory; but they were not bound to continue the experiment during

the whole term of service, if, after a fair trial, they found that she was, in many respects, unsuited to their employment, and that a further continuance of her service would result in serious injury to their business interests.

In the argument the counsel of the plaintiff have presented another legal question. There is some evidence tending to show that the defendants, after two months' experience and observation of the conduct and fitness of the plaintiff, approved the same in language of high commendation, and continued her in their service. It is insisted that this conduct of the defendants was a condonation of any breach of contract occasioned by any past improprieties or deficiencies in taste and skill. Condonation is a pardon or forgiveness of a past wrong, fault, or deficiency which has occasioned a breach of some duty or obligation. If there has been an *actual* forgiveness of a breach of contract on the part of a master to a defaulting servant, he cannot afterwards rely upon such breach in discharging the servant; but such condonation can in no respect extend to subsequent offences, or to a continued deficiency.

Retaining in service after knowledge of a breach of contract is *prima facie* a condonation, and a presumed waiver of such breach; but this is a question of fact for the jury to determine after considering all the facts and circumstances of a case. If the defendants in this case have by their testimony satisfied you that no condonation was intended, but that their language of commendation and their indulgence were prompted by feelings of kindness and forbearance; or if they have shown any other good reason for delay in discharging the plaintiff after knowledge of a breach of her contract,—then the legal presumption of a waiver of said breach will be rebutted, and you can find that the defendants were justified in dismissing the plaintiff from their service for any sufficient cause which they had known and overlooked in the course of employment.

I have now stated to you the principles of law involved in this case, and instructed you as to the rules for applying the

law to the evidence, and I now leave the questions of fact presented in the issues submitted for your determination.

The jury returned a verdict in favor of the plaintiff.