THOMAS KENWORTHY *vs.* HENRY R. STEVENS.

Suffolk. Nov. 14, 1881. — Jan. 2, 1882. MORTON, J., absent. FIELD, J., did not sit.

A., an advertising agent, entered into a written contract with B., by the terms of which A. was to insert for B. an advertisement in a specified position in a certain number of lists of a newspaper union, which embraced a large number of papers, for the term of one year in consecutive weeks for a sum stated, to be paid in advance by B. accepting four drafts of A. of a certain amount, payable in three, six, nine, and twelve months; to furnish B. copies weekly of the different papers; to examine the files of the lists and to make no charge for the advertisement when it was not in the specified position; and in case, from any cause, A. should be unable to carry out the provisions of this agreement, he agreed to return at once to B. either his acceptances or the full amount of the

same in money, said money to be held by him until the return of the accept-
ances. A. failed to insert the advertisement in consecutive weeks, and to fur-
nish B. with all the papers he was required to furnish. The first three drafts
were paid by B. *Held*, in an action against B. on the fourth draft, that the
inability to perform the contract, provided for in the clause above stated,
meant an absolute inability, and not a mere failure to perform in subordinate
details; that the action could be maintained; and that B. was merely entitled
to recoup the damages he had sustained by A.'s failure to comply with the
terms of the agreement.

CONTRACT upon a bill of exchange, dated January 26, 1877,
for $2550, drawn upon and accepted by the defendant, and pay-
able six months after date to the order of Charles A. Clegg.
The answer contained a general denial; and alleged that the de-
fendant entered into the following written contract with Clegg:
" Boston, Mass., January 26, 1877. I hereby agree to insert
the advertisement of H. R. Stevens, measuring ten inches space,
twenty-six times, every alternate week, in the six lists of the
American Newspaper Union, now numbering twelve hundred
papers. Also, to insert his one and one-half-inch advertisement,
this advertisement to average one and one half inches, twenty-
six times, every alternate week, in said lists, said advertisement
to be always the first advertisement following reading matter,
when there is room next the full column ; when there is not
room, then to be at top of column next to the reading matter,
for the term of one year or fifty-two acceptable insertions, each
advertisement to run two times or two insertions of the short
advertisement and two of the long, then change of matter, for
the sum of ten thousand two hundred dollars, to be paid to me
in advance by his, H. R. Stevens, accepting my four drafts of
twenty-five hundred and fifty dollars each, on three, six, nine,
and twelve months from this date, without interest. I further
agree to furnish said H. R. Stevens copies weekly of the six dif-
ferent lists, and of the different forms of said lists. I also agree
to examine the files of the said six lists every week, and to make
no charge for the advertisements when they are not in said speci-
fied positions. In case, from any cause, I am unable to carry
out the provisions of this agreement, I agree to return at once
to said H. R. Stevens either his acceptances or the full amount
of the same ($10,200) in money, said money to be held by him
until the return of the acceptances. Charles A. Clegg."

The answer further averred failure of performance by Clegg; that three of the drafts had been paid by the defendant in full; and that the plaintiff became the owner of the one declared on after maturity, and after it had been dishonored, without consideration, and with knowledge of the defences existing thereto. The case was referred to an auditor, who found the following facts:

This bill of exchange was one of four originally delivered by the defendant to Clegg, and was taken and is held by the plaintiff under circumstances, as agreed by counsel, subjecting it to the same defences that would be open if the action were brought by Clegg. On January 26, 1877, Clegg, who is an advertising agent having his place of business in the city of New York, entered into a written contract with the defendant, a copy of which is set out in the defendant's answer, and in consideration thereof the defendant delivered to Clegg his four acceptances of $2550 each, dated January 26, 1877, and payable in three, six, nine, and twelve months from date, without interest. After the contract had been executed, the defendant waived the provision therein as to the position of his advertisements in the papers, and in consideration therefor Clegg paid the defendant $800 cash. The American Newspaper Union mentioned in the contract is a combination or union of newspapers composed of six subdivisions or lists, which subdivisions are located in different cities. The newspapers of this union are printed in different localities upon one side, contain reading matter and advertisements, and are sent to the offices of the various papers, where they are completed and circulated. In the autumn of 1876, the American Newspaper Union issued a catalogue, upon the title-page of which it was represented and printed that the number of papers composing the union was 1200. The subsequent pages of the catalogue contained the name of each paper comprising the six different lists, with the State and town where located. The detailed list so printed did not contain 1200 papers, but only 1146, of which 1100 were not co-operative papers at the time the contract was executed. Clegg had nothing to do with the preparing of the catalogues, although his name and address were printed upon some of them. The number of papers comprised in said union was constantly changing from week to

week, some papers going out and others going in; and this course of business was known to Clegg and the defendant at the time the contract was made. The actual number of papers comprised in said union at the date of the contract was 1148, and the number when the defendant's advertisement was first inserted was 1158; and said union never, during the period of the contract, contained 1200 papers; the highest number was 1169. At and before the time the contract was made, Clegg represented to the defendant that the number of papers in said union was 1200, and this representation was relied upon by the defendant; and Clegg at the same time delivered to the defendant a copy of the catalogue, which was retained by the defendant. The defendant contended that said representation was made by Clegg fraudulently, and with knowledge that the same was false; but the auditor found that the representation was made by Clegg honestly, believing the same and relying upon the statement in the catalogue, and that neither Clegg nor the defendant then counted the papers mentioned in the catalogue, but both had an opportunity to so verify the accuracy of the statement. Clegg caused the defendant's advertisements to be inserted in all the newspapers comprised in the American Newspaper Union twenty-six times each, but not in consecutive weeks. The number of papers which Clegg was required to furnish during the period of the contract under the clause therein, whereby he agreed to furnish copies weekly of the six different lists, and of the different forms of said lists was 2496, and of these he furnished 1750, at irregular intervals.

The auditor found that the sum of $400 was a full compensation to the defendant for the injuries actually received by him from all breaches of the contract; and that the plaintiff was entitled to recover the amount of the bill of exchange declared on, with interest from the maturity thereof, less said sum of $400 by way of recoupment.

At the trial in the Superior Court, before *Staples*, J., the plaintiff put in evidence the auditor's report; and the defendant put in evidence the contract referred to in that report. No other evidence was offered by either party.

The defendant asked the judge to rule as follows: 1. Under the pleadings, the facts found and reported by the auditor

and the contract referred to in his report are not sufficient to authorize a verdict for the plaintiff. 2. Under the pleadings, the facts found and reported by the auditor, taken in connection with the contract referred to in his report and the proper legal construction of that contract, require the ruling that this action cannot be maintained.

The judge declined so to rule; and instructed the jury that, upon the evidence, they were warranted in finding for the plaintiff for the amount found by the auditor. The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*E. O. Shepard,* for the defendant.

*C. Blodgett,* for the plaintiff.

DEVENS, J. The agreement between the parties contained the following clause, viz.: "In case from any cause I [Clegg] am unable to carry out the provisions of this agreement, I agree to return at once to said H. R. Stevens either his acceptances or the full amount of the same ($10,200) in money, said money to be held by him until the return of his acceptances."

The defendant contends that the clause bound Clegg to return all the acceptances (or the full amount of the same in money) in case of inability or failure on his part during the performance or at the expiration of the contract to carry out all its provisions. He further contends that the fact that the number of papers in which Clegg could and did insert the advertisement was less than that honestly represented by him, and the further fact that he did not furnish to the defendant the number of papers agreed to be furnished, (for which deficiency the auditor has allowed compensation by way of recoupment,) conclusively show that the contingency contemplated by the contract has happened. He therefore argues that, as it is agreed that the same defences are open to the acceptance in the hands of the plaintiff that would be so if it were in the hands of Clegg, there can be no recovery in the present action, as it would be to permit the plaintiff to recover upon an acceptance which it was his duty to deliver up to the defendant.

Clegg was an advertising agent. The written contract made by him was one which could only be carried out through a combination of newspapers known as the American Union, which embraced a large number of papers. As the payment

by acceptances was in its nature a payment in advance, the failure of Clegg to put himself in position to enter upon and perform the contract, by reason of his failure to make such arrangements as were necessary so to do, was, in our view, the failure against which the defendant desired to protect himself. Indeed, it was found, before the execution of the contract began, that, in one respect (that of the position of the advertisement in the papers) deemed important by both, Clegg could not make the arrangement proposed, and suitable compensation was made therefor by the payment of $800 to the defendant. The inability to " carry out the provisions of this agreement " was an inability to enter upon and fairly perform the contract as made; but it was not intended that, if he did this and substantially performed the contract, he should be bound to return the acceptances or the money therefor, if in some particulars he failed to comply with all its requirements. The circumstance that three of the acceptances would become due before the contract could possibly be performed by publishing the advertisements, and that the fourth must become due before the advertisements could be published and the lists be furnished, strongly supports our view that the inability contemplated was not a mere inability or failure to perform in subordinate details. It is further sustained by the fact that the catalogue of papers embraced in the American Union, which was published by it and honestly furnished to the defendant by Clegg at the time of making the contract, while it purported on the title-page to enumerate 1200 papers, in fact contained only 1146. The defendant had thus an ample opportunity of verifying the statement as to the number of papers controlled by this association. Even if he did not do so at the time, he must have had full knowledge after the performance of the contract began, that they were less in number than the title-page represented. Yet, with this knowledge, he did not repudiate the contract, but, as appears by his answer, paid the three earlier acceptances, thereby recognizing its existence, and trusting, it may be presumed, to his appropriate remedy, if in all particulars it was not fully performed. This remedy is found in a proper reduction by way of recoupment from the contract price as expressed in the acceptances when an action is brought thereon by Clegg, or any one properly

subject to the same defences. It is not easy to see why Clegg should be required to surrender the acceptance on which action is brought, and thereafter sue, as the defendant concedes he may do, on a *quantum valebant* for the services he has honestly performed under the contract with the honest intent of carrying it out, which have been of advantage to the defendant, and which have been accepted and partially paid for by him. Nor is it perceived that such a course would be of any benefit to the defendant. *Exceptions overruled.*