## MATHESIUS v. BROOKLYN HEIGHTS R. CO.

(Circuit Court, E. D. New York.   October 4, 1899.)

1. RAILROADS—CONTRACT OF GUARANTY.
   It is within the powers of a railroad company to become guarantor of a contract made by a construction company for the services of an engineer to be rendered in the construction· of its road, and it is not relieved from liability by a subsequent change in its plans by which the services are not required.

2. DAMAGES—BREACH OF CONTRACT—EVIDENCE.
   In an action for breach of contract, in which the claim for damages is based on a liability incurred in reliance on such contract, defendant cannot defend on the ground that such liability is barred by limitation.

3. SAME—CONTRACT OF EMPLOYMENT.
   The measure of damages for the breach of a contract of employment by the employer is prima facie the sum stipulated to be paid for the services, and the burden of reducing the damages by proof of other earnings by the employé rests on the employer.

4. SAME—MEASURE OF DAMAGES.
   Defendant contracted with a third party for plaintiff's services, agreeing to pay therefor a stipulated sum. In reliance on such contract, the third party employed plaintiff, and obligated itself to pay him for the services to be rendered thereunder, and, defendant having refused to accept such services, it assigned the contract to plaintiff, who brought suit for its breach. *Held*, that defendant could not require the liability of plaintiff's assignor to him to be determined by litigation to establish the measure of damages, but that, in the absence of proof in reduction of damages, plaintiff was entitled to recover the sum stipulated to be paid by the contract.

On Motion by Defendant for a New Trial.   Denied.

Levi W. Naylor (George H. Beattys, of counsel), for plaintiff.
Sheehan & Collin (Mr. Collin, of counsel), for defendant.

THOMAS, District Judge. · The Covered Tube Cable Railway Company, a corporation organized to develop a specific tube system relating to railway construction, obtained on March 4, 1886, an

interest in a certain right of way through Montague street hill, which is an extension of Montague street, in the city of Brooklyn, N. Y. The Wall Street Ferry Railroad Company, by contract with the cable company, qualifiedly succeeded to this right, and also became on May 15, 1888, the owner of the right or license to use the "covered tube cable railroad system," and also obtained certain consents of abutting property owners to the construction and operation of a railroad on Montague street. These corporations seem to have been in practical alliance, and the plaintiff, who was a civil engineer, and the inventor of the covered tube cable system, was the president of the cable company, and vice president of the Wall Street Ferry Railroad Company. Later the Brooklyn Heights Railroad Company sought to own and to operate a railway over Montague street, with a terminus at the Wall Street Ferry. But no railway could be built without obtaining rights of way and consents equivalent to those held by the two corporations first mentioned. Therefore the Brooklyn Heights Railroad Company, having, through those in control of it, promoted the formation of the Montague Construction Company, contracted with such company to build a railway over the desired line. Three legal obstacles were in the way: (1) The procurement of the right to build the road from the local authorities, and the purchase of the franchise; (2) the obtainment of the constitutional consent of the abutting property owners; (3) the acquisition of the right of way over Montague street hill. The Wall Street Ferry Company held conditional ownership of the last-named right, and also had certain consents of the abutting property owners. Hence the Brooklyn Heights. Company contracted directly with the cable company and the Wall Street Ferry Company for the purchase of the right of way over Montague street hill on December 31, 1889; and on the same date the Montague Construction Company obtained from the Wall Street Ferry Railroad Company an assignment of the latter's license to use the covered tube system in the construction of the railway, while on the succeeding January 3, 1890, the Montague Construction Company obtained from the Wall Street Railroad Company an assignment of the consents of the abutting property owners. The Brooklyn Heights Railway Company in this manner obtained, through itself or its subsidiary company, all the public and private rights of the cable company and Wall Street Ferry Company which those companies could confer; but it had no plans for the covered tube, nor did it command the necessary skill for the execution of such plans in the construction of the road. To obviate this difficulty the Montague Construction Company on the same 31st day of December, 1889, contracted with the Covered Tube Cable Railway Company for the procurement of such plans and such engineering skill at an agreed price. By the stipulation the cable company should receive $5,000 for the plans, and should employ the plaintiff for the entire work at the general sum of $7,500, which sum the construction company undertook to pay the Wall Street Ferry Company. The Brooklyn Heights Railway Company on the same day guarantied performance by its construction company. Pursuant to such con-

tract the cable company entered into an agreement with Mathesius whereby it engaged his services for the entire work at such specified sum of $7,500, and thereby assumed a liability that has never been discharged. The $5,000 was paid for the plans, but a balance of $4,000 remains unpaid of the $7,500 so as above stipulated to be paid, and for this sum, with interest, the court directed a verdict for the plaintiff. The motion for a new trial is now under consideration. The only condition mentioned in and modifying the contract in question relates to the purchase of the franchise by the Brooklyn Heights Railroad Company. There is no other condition mentioned, and the law implies none. The Brooklyn Heights Company had employed the construction company to build the road. The construction company, to forward the construction of the railway, bought certain appropriate plans of another corporation, and contracted with it to provide labor necessary to make such plans effective. The main company guarantied the payment. This was within the exercise of its legitimate powers. If a contractor purchase material or engage labor to build a railroad, the railway company is competent to assure the person agreeing to furnish the labor or material that he shall be paid therefor. But it is urged that it was an implied condition that the liability of the contracting parties should end, provided the railroad company decided to employ some other plan. It is true that the railroad company may control its own plan, but when the construction company arranges for labor or material for a certain plan, and the railroad company guaranties the fulfillment of such contract, an election as regards the other contracting party arises, to use such plan. The railroad company is at liberty to change its plan, but not at the expense of third persons, of whom it has engaged labor and material. If a construction company engage for construction work peculiarly formed iron columns, usable for a particular plan, the guarantying railroad company would not be excused from payment therefor upon the plea that it thereafter elected to build its road by a system not requiring such material. If a construction company engage an engineer whose skill relates to a system of construction adapted for the use of compressed air, the guarantying railroad company would not be excused from paying for such engaged services upon the plea that it had concluded to employ an electrical plant, in the construction of which such engineer's ability would not be serviceable. The conclusion is that the contract was lawful, and was a due exercise of the defendant's corporate powers. The contract was broken without apparent excuse. The cable company could maintain an action therefor, and the plaintiff has succeeded to its rights.

The final question relates to the damages recoverable. It is claimed that "the contract for the services of Mathesius was countermanded before the time had arrived, or at least promptly on the arrival of the time for the rendition of such services," and "that no part of the services of Mathesius for which the construction company was to pay the cable company a total of $7,500 were ever actually rendered by Mathesius." Notwithstanding such attempted

countermanding of the contract, there was no impairment of the defendant's liability. The cable company had solemnly engaged to pay the plaintiff $7,500 for the work, and had received from the construction company and paid the plaintiff $3,500. Now, it is urged that the cable company has suffered no damages, (1) because there is no evidence that the cable company has paid the plaintiff the $4,000, or suffered damage to that amount; (2) that the plaintiff's claim against the cable company was outlawed. The honorable recognition and payment of its debts is permitted to the cable company. It is not required to escape a moral obligation by shielding itself behind the statute of limitations. Hence, it owes the plaintiff $4,000 and interest, unless it can show (and the burden is on it to show) that the plaintiff obtained other employment that saved him from all pecuniary injury. The primary obligation of an employer who has prevented performance by the person employed is the sum stipulated for the service; and, while this sum may be diminished by proof of earning elsewhere, such proof must be furnished by the person who would rid himself in whole or in part of his pecuniary obligation. Howard v. Daly, 61 N. Y. 362; Taylor v. Bradley, 39 N. Y. 129, 141; Crawford v. Publishing Co., 22 App. Div. 56, 47 N. Y. Supp. 747. The defendant's contention is that the cable company must litigate the question with the plaintiff, and thereby establish his damages. No rule of law places such a burden upon the cable company, and should not. The construction company did not indemnify the cable company up to a certain limit. It covenanted to pay; it covenanted to pay a definite gross sum; and the promise was conditionless, so far as concerns any question here. The contract with the cable company was, "You employ Mathesius for the whole work for the full sum of $7,500, and the construction company shall pay you that sum." It is not necessary for the cable company to show that it cannot escape payment, or to what extent it may escape payment. It is for the defendant to establish that the liability assumed at its instance no longer exists, or that it has been diminished. In a case like that at bar, the amount which would have been received if the contract had been kept is the measure of damages if the contract is broken. Wicker v. Hoppuck, 6 Wall. 94. The law on this subject is illustrated by the following cases: Rector, etc., v. Higgins, 48 N. Y. 532; Belloni v. Freeborn, 63 N. Y. 383, 390; Kohler v. Matlage, 72 N. Y. 259; Maloney v. Nelson, 144 N. Y. 182, 186, 187, 39 N. E. 82; Bank v. Cumings, 149 N. Y. 360, 44 N. E. 173; Jackson v. Port, 17 Johns. 479; Ex parte Nogus, 7 Wend. 499. The construction company prevented performance by the cable company, and may not visit upon the latter company all embarrassments arising from such conduct.

No other question raised demands discussion. The motion for a new trial is denied.