### T. H. FLOOD & CO. v. BATES.

(Circuit Court of Appeals, Seventh Circuit. September 12, 1922.)

No.-2983.

1. **Appeal and error** ☜849(2)—**Record held not to show absence of written stipulation waiving jury.**

Affirmance of judgment for plaintiff in a law action tried by the court without a jury *held* not required, on the ground that the record failed to show that the parties filed with the clerk a written stipulation waiving a jury, in accordance with Rev. St. § 649 (Comp. St. § 1587), where the bill of exceptions, bearing the indorsed approval of plaintiff before being signed by the judge and filed in the cause, certified that "the parties in writing waived a trial by jury."

2. **Appeal and error** ☜237(6)—**Requests held in effect motions for directed verdict.**

In a law action, where no special findings of fact were made, the contention of plaintiff, defendant in error, that the bill of exceptions contained no basis, as required by Rev. St. § 700 (Comp. St. § 1668), for a review of the general finding, could not be sustained, where the bill of exceptions showed that during the trial, at the conclusion of the evidence, and before the general finding was made, defendant by means of "requests" presented two contentions why, on taking all the evidence in plaintiff's favor as true, either no recovery by him could be had, or only a recovery for nominal damages, as these requests, overruled by the court, and the rulings excepted to by defendant, were in legal effect the same as the customary motions for directed verdicts in jury trials.

3. **Contracts** ☜25—**Contract to publish law book held not to depend on future agreement as to terms.**

A contract between author and publisher for the publication of a law book, to be revised by the author, "together with such new subjects and added matter as may be agreed upon," was not, by reason of the quoted

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

clause, incomplete; but the revision was the subject-matter of a completed contract, and the clause as to possible agreement as to new subjects did not affect such completeness, but was merely matter in addition.

4. **Damages** ⊂⊃163(2)—**Burden of proof as to reduction of damages held on defendant.**

In author's action for publisher's breach of contract to publish the revision of a law book, the copyright to be owned by the publisher, the proof reading and press supervision to be done by the author, and the publisher to pay the author for the copyright $4,000, payable $50 monthly, for one year, and the balance when the book was printed, where the court found that the publisher repudiated the contract after paying $600, *held*, that defendant had the burden of proving a diminution of recovery to less than the balance of the contract price, or $3,400.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by C. L. Bates against T. H. Flood & Co. Judgment for plaintiff, and defendants bring error. Affirmed.

John M. Zane, of Chicago, Ill., for plaintiffs in error.
Dave R. Clark, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Bates sued Flood & Co. on the following contract:

"The said C. L. Bates, in consideration of the agreements of the said T. H. Flood & Co., hereinafter contained, hereby agrees with them and their representatives and assigns to prepare and place with them for publication, within one year from the date, the manuscript of a work on 'Federal Procedure' (with Forms) in three (3) volumes of about one thousand (1,000) printed pages each. The said work to consist of a complete and thorough revision, brought down to date, of the two books known as 'Bates' Federal Equity Procedure,' 2 volumes (copyright of which is owned by T. H. Flood & Co.) and 'Bates' Federal Procedure at Law,' 2 volumes (copyright of which is owned by C. L. Bates), *together with such new subjects and added matter as may be agreed upon between the author and publisher. The copyright is to be owned by T. H. Flood & Co.* and the said C. L. Bates agrees to defend it at his own expense from all suits for infringement or adverse claims. *He further agrees to read the proof and to superintend the passage of the book through the press in the usual manner of authors;* he will not prepare, edit, or cause to be published, in his name or otherwise, anything which may injure or interfere with the sale of the aforesaid book without the consent of T. H. Flood & Co. for that purpose, had in writing.

"The said T. H. Flood & Co., in consideration of the foregoing agreements of the said author of the aforesaid book, hereby agree on their part that they will, upon delivery to them of the manuscript thereof, print and publish the book in first-class style and will give the said author five (5) sets for his own use without charge. They further agree to pay the said C. L. Bates for all his right, title and interest in 'Federal Procedure,' 3 volumes (including the copyright of 'Federal Procedure at Law,' 2 volumes), the sum of four thousand dollars ($4,000.00), payable fifty dollars ($50.00) monthly for one year, beginning January, 1912, *and the balance in cash or notes when the book is printed, bound, and ready for the market."*

Bates was paid the twelve $50 installments, and the action involved the remaining $3,400 of the $4,000 mentioned. Opposing contentions arise from portions of the contract which we have italicized.

[1] But first some practice objections must be laid at rest. Trial

was by the court without a jury, and Bates contends that we can only affirm the judgment in his favor because the record as presented here fails to show that the parties "filed with the clerk a stipulation in writing waiving a jury" in accordance with section 649, R. S. (Comp. St. § 1587). But the bill of exceptions, bearing the indorsed approval of Bates before being signed by the judge and filed in the cause, certifies that "the parties in writing waived a trial by jury." This would afford a sufficient basis for restoring the stipulation, if lost, and for filing the copy with the clerk, if the original was not in fact so filed; but, in view of the situation recorded in the filed bill of exceptions, we deem it an idle ceremony to have the record supplemented or corrected.

[2] No special findings of fact were made. Bates insists that the bill of exceptions contains no basis, as required by section 700, R. S. (Comp. St. § 1668), for a review of the general finding. But the bill of exceptions shows that during the trial, at the conclusion of the evidence, and before the general finding was made, Flood by means of "requests" presented two contentions why, on taking all the evidence in Bates's favor as true, either no recovery by him could be had, or only a recovery for nominal damages. These requests, overruled by the court and the rulings excepted to by Flood, were in legal effect the same as the customary motions for directed verdicts in jury trials.

[3] Because the parties never were able to agree upon what "new subjects and added matter" should be incorporated in the "revision," Flood argues that no binding contract was ever formed. In our opinion the "revision," adequately described, was the subject-matter of a completed contract. "New subjects and added matter," not within the existing books which were to be revised, might be suggested by either, and, if and when agreed upon by both, were to be prepared by Bates and published by Flood, without affecting in any way their previously perfected contract respecting the revision.

[4] By the general finding it was held that Bates completed the manuscript and tendered it to Flood in exact accordance with the requirements of the contract, and Flood thereupon wrongfully repudiated his obligation to publish and pay. Flood says that the contract was for the sale of a completed book, requiring proof reading and press supervision by Bates, and that, the burden being on Bates to prove his damage (the $3,400 less the unproven value of Bates's unperformed labor in completing the book), only nominal damages were allowable on the state of the evidence. Bates, on the other hand, urges that the contract calls for nothing from him except personal services, and that the burden was therefore on Flood to introduce evidence to reduce the recovery below the $3,400. Each side presents many cases.[1]

[1] Flood cited: Arthurs v. Hart, 17 How. 6, 15 L. Ed. 30; Baldwin v. Bennett, 4 Cal. 392; Butler v. Butler, 77 N. Y. 472, 33 Am. Rep. 648; Chicago v. Tilley, 103 U. S. 146, 26 L. Ed. 371; Columbian Lyceum Bureau v. Sherman, 19 N. D. 58, 121 N. W. 765; Fuller v. Little, 61 Ill. 21; Hinckley v. Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; International Textbook Co. v. Schulte, 151 Mich. 149, 114 N. W. 1031; Kenworthy v. Stevens, 132 Mass. 123; Leatherberry v. Odell Ragan & Co. (C. C.) 7 Fed. 641; Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373; Lewis v. Sherin Co. (D. C.) 194 Fed. 976; Maynard v. Royal Worcester Corset Co., 200 Mass. 1, 85 N. E. 877; McDermott v. De Meridor, 80 N. J. Law, 67, 76 Atl. 331; Mathesius v. Brook-

Though the money is mentioned only in immediate connection with payment to Bates "for all his right, title, and interest" in the book and the final balance is payable only "when the book is printed, bound, and ready for the market," thus affording some basis for Flood's view that the contract was for the sale by Bates to Flood of a completed book, yet other provisions militate against that position. In necessary order of time the mutual engagements were these: Bates was to complete the manuscript of the revision; then tender it to Flood; thereupon Flood was to accept the manuscript and convert it into a book by printing and binding; during the course of the printing Bates was to read the proof and supervise the press work; when copies were ready to be deposited at Washington under the copyright law, and were so deposited, the copyright was to be the property of Flood; and then, everything else having been done, Flood was to make the final payment. When the contract is viewed as a whole, we can find no room for doubting that Flood's money was to pay, not merely for the copyright of a completed book, but also for all of Bates's personal services in preparing the manuscript and following it through the press. But Bates was not engaging to sell to Flood a completed book. Under the terms of the contract it was beyond Bates's right and power to convert the manuscript into a book. That was under the exclusive jurisdiction of Flood. It was Flood's repudiation that prevented Bates from completing his services. Flood's repudiation also rendered impossible any

lyn Heights R. Co. (C. C.) 96 Fed. 792; Millard v. County of Richland, 13 Ill. App. 527; Moyer v. Cantieny, 41 Minn. 242, 42 N. W. 1060; Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; St. Louis v. Western Union Tel. Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380; Schlottman v. Du Pont Powder Co. (D. C.) 210 Fed. 356; Springfield Fire Ins. Co. v. Sea, 21 Wall. 158, 22 L. Ed. 511; Town of Martinton v. Fairbanks, 112 U. S. 670, 5 Sup. Ct. 321, 28 L. Ed. 862; United Press v. National Newspapers (D. C.) 227 Fed. 193; United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168; United States v. Purcell Envelope Co., 249 U. S. 313, 39 Sup. Ct. 300, 63 L. Ed. 620; United States v. Speed, 8 Wall. 77, 19 L. Ed. 449; Ware Bros. Co. v. Cortland Cab Co., 192 N. Y. 439, 85 N. E. 666, 22 L. R. A. (N. S.) 272, 127 Am. St. Rep. 914.

Bates cited: Boardman v. Toffey, 117 U. S. 271, 6 Sup. Ct. 734, 29 L. Ed. 898; Bond v. Dustin, 112 U. S. 604, 5 Sup. Ct. 296, 28 L. Ed. 835; Boogher v. Insurance Co., 103 U. S. 90, 26 L. Ed. 310; British Queen Mining Co. v. Baker Silver Mining Co., 139 U. S. 222, 11 Sup. Ct. 523, 35 L. Ed. 147; County of Madison v. Warren, 106 U. S. 622, 2 Sup. Ct. 86, 27 L. Ed. 311; Columbian Lyceum Bureau v. Sherman, 19 N. D. 58, 121 N. W. 765; Fuller v. Little, 61 Ill. 21; Insurance Co. v. Sea, 21 Whll. 158, 22 L. Ed. 511; Insurance Co. v. Folsom, 18 Wall. 237, 21 L. Ed. 827; Kearney v. Case, 12 Wall. 275, 20 L. Ed. 395; Kenworthy v. Stevens, 132 Mass. 123; Leatherberry v. Odell Ragan & Co. (C. C.) 7 Fed. 641; Lewis v. C. E. Sherin Co. (D. C.) 194 Fed. 976; Lord v. Board of Trade, 163 Ill. 45, 45 N. E. 205; Martinton v. Fairbanks, 112 U. S. 670, 5 Sup. Ct. 321, 28 L. Ed. 862; Maynard v. Royal Worcester Corset Co., 200 Mass. 1, 85 N. E. 877; McDermott v. De Meridor Co., 7 Penn. 101, 76 Atl. 231; Mathesius v. Brooklyn Heights R. Co. (C. C.) 96 Fed. 792; Millard v. County of Richland, 13 Ill. App. 527; Moyer v. Cantieny, 41 Minn. 242, 42 N. W. 1060; Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Raimond v. Terrebonne Parish, 132 U. S. 192, 10 Sup. Ct. 57, 33 L Ed. 309; Streeter v. Sanitary District of Chicago, 133 Fed. 124, 66 C. C. A. 190; Tyng v. Grinnell, Collector, 92 U. S. 467, 23 L. Ed. 733; Ware Bros. Co. v. Cortland Cart & Carriage Co., 192 N. Y. 439, 85 N. E. 666, 22 L. R. A. (N. S.) 272, 127 Am. St. Rep. 914.

passing of ownership of a copyright. Now, while the contract on Bates's part covered something more than rendition of personal services, namely, the ownership of the copyright, yet in our judgment the covenants for services purely personal should be held controlling in giving character to the contract, because such services were the affirmative and substantial things required of Bates, and because Flood's acquisition of the copyright (if he had produced the necessary copies) would have required nothing from Bates but acquiescence in Flood's action under his contract right. It follows therefore that Flood should have taken the burden of proving a diminution of recovery to less than the contract price.

· The judgment is affirmed.