BEAN v. MILLER, *Appellant.*

1.   **Railroad Construction Contract**: RIGHT OF WAY. A sub-contractor for the construction of a railroad is not bound to procure the right of way; and if he is prevented from fulfilling his contract by reason of the fact that the company has not a right of way over some of the lands through which the road is to run, and the owners refuse him permission to enter and do the work, this is a sufficient excuse for his failure.

2.   **Contract**: PAYMENT IN INSTALLMENTS: DEFAULT OF PAYOR: RIGHTS OF CONTRACTOR. Where work is done under a contract which provides for payment by installments at stated periods, and the payments are not made, the contractor may quit the work and he will then be entitled to recover for all that he has done at the contract rates; and this notwithstanding the contract provides in express

terms, that the work shall be steadily prosecuted without intermission to final completion.

3. ————: PAYMENT TO BE MADE ON ENGINEER'S ESTIMATES. Where it is stipulated in a contract that the work to be done under it is to be paid for upon the estimates of an engineer, to be made at stated times, if the engineer makes only approximate estimates, and the contractor is prevented from completing the work through the fault of the other party, he may recover for the whole amount of work done, as well that of which no estimate has been made as that which has been estimated.

*Appeal from Atchison Circuit Court.*—HON. H. S. KELLEY, Judge.

At the trial the plaintiffs introduced testimony tending to prove the following points and facts: 1. That plaintiffs worked themselves on the first seven miles of their contract, up to the 1st day of November, 1873, when they abandoned it. 2. That the remaining five miles of said contract was sub-let to other parties, who worked on that portion from time to time, until they abandoned their work in April or May, 1874. 3. That the defendant knew all the time of said sub-contractors; never objected to them, and agreed to it before and at the time it was done, to hasten the work. 4. That the amount of cubic yards of excavation ranged from 39,000 to 58,000; clearing, 17 to 23 acres; grubbing, 2½ acres, estimated and unestimated. 5. That by the 1st day of November, 1873, plaintiffs had completed all the work on the first seven miles, where the right of way had been procured. 6. That defendant, during the progress of the work, frequently promised plaintiffs and their sub-contractors to pay for said work, and that plaintiffs quit work on account of failure to get right of way and money due them on their work; and that the sub-contractors quit their work because they could not get their money from plaintiffs. 7. The evidence also tended to show that approximate estimates of the work done in September, October and November, 1873, and other months, were made and furnished to defendant as provided in the

25—69

contract substantially to the amounts indicated in the ninth instruction asked for defendant; that plaintiffs demanded payment of 85 per cent. of these estimates from month to month as they became due, and in May, 1874, demanded pay for all the work done, including the large additional amounts which had not been included in the approximate estimates. Defendant's own deposition stated that most of these approximate estimates had been returned to him, and admitted that he had paid nothing for the work, and that he owed plaintiffs something. 8. While the evidence tended to show that the work done on the last five miles was done by parties called in this suit sub-contractors; it further tended to show that plaintiffs retained and exercised personal control over the work, and that they had employed Zimmerman, Rhodes & Phelps to do that part of the work by the piece or job, instead of working by the day as had been done with the first seven miles. 9. The evidence further tended to show that both the defendant and said engineer directed plaintiffs not to work without owner's consent where the right of way had not been secured, and that the work so far as done, was under supervision of said engineer or his assistants.

*Allen H. Vories* for appellant.

1. The suit cannot be maintained as an action on the contract, because it is admitted that there was a failure on plaintiffs' part to complete the contract, and it is no where alleged that plaintiffs are ready to complete it, or that it has been accepted by defendant, but it is charged that they completed it as far as the failure, default and interference of defendant would permit them. *Denny v. Kile*, 16 Mo. 450; *Downey v. Burke*, 23 Mo. 228; *Marsh v. Richards*, 29 Mo. 105; *McCullough v. Baker*, 47 Mo. 401; *Williams v. Porter*, 51 Mo. 441; *Yeats v. Ballentine*, 56 Mo. 533; *Turner v. Mellier*, 59 Mo. 535; *Eyerman v. Mt. Sinai Cem. Ass.*, 61 Mo. 491; *Porter v. McPherson*, 61 Mo. 241; *Lee v. Ashbrook*,

14 Mo. 378; *Canal Co. v. Gordon*, 6 Wall. 561; *Merrill v. I. & O. R. R. Co.*, 16 Wend. 588.

2.  The plaintiffs' first instruction was erroneous in assuming that under the contract defendant was bound to procure the right of way from the owners of the land over which the road ran.  The contract was silent on that point.

3.  The plaintiffs' second and fifth instructions were erroneous.  The failure to pay the monthly estimates was no legal excuse for suspending the work until payment was made.  *Hale v. Trout*, 35 Cal. 242; *Cox v. McLaughlin*, 1 Cal. Leg. Record, 42; *s. c.*, 52 Cal. 590; *Merrill v. I. & O. R. R. Co.*, 16 Wend. 588.

4.  Plaintiffs' third instruction is erroneous.  The contract expressly prohibits sub-letting, and the petition says nothing about a waiver of this prohibition.  The plaintiffs must recover on the cause of action stated in their petition —not upon an excuse for non-performance of their contract heard of for the first time in the replication.  *Henning v. U. S. Ins. Co.*, 47 Mo. 430.  The contract between the parties being under seal, there must have been a performance or a release under seal; and no parol change of its terms to admit of parol proof of consent to sub-let, can avail in this case.  *Thomas v. Cox*, 6 Mo. 506; *Wildbahn v. Robidoux*, 11 Mo. 659; *Sinard v. Patterson*, 3 Black. 358.

*John P. Lewis* for respondents.

1.  Appellant having in the contract employed respondents to do the clearing, grubbing, excavating, &c., on the road, was bound to survey and mark out the road and secure rights of way from land owners.  It was in no sense the respondents' duty.  *Marsh v. Richards*, 29 Mo. 99; *Hammer v. Breidenbach*, 31 Mo. 49; *Appleby v. Myers*, 6 Law Reg. (N. S.) 112; *Allamon v. Albany*, 43 Barb. 33.

2.  Even if the contract could be so construed as to prevent respondents from performing any part of the work by sub-letting to others, yet the evidence is abundant that

the work done by Zimmerman, Rhodes and others, was done with appellant's consent; that he even urged them to continue work, and the only money paid was to Zimmerman, one of the supposed sub-contractors.

3. The appellant's delays and defaults had become so oft repeated and chronic as to be practically an abandonment on his part; certainly they were sufficient to warrant respondents in suspending work and suing for the amount earned under the contract. And the contract price would be the least they could be required to accept. *McCullough v. Baker*, 47 Mo. 401. Mere failure to pay installments as they become due may not in ordinary cases be sufficient to authorize abandonment and suit for prospective damages for work not performed. *Fitzgerald v. Haywood*, 50 Mo. 524. But it is sufficient to authorize the contractor to suspend and recover for work already performed at the contract price.

4. Even had respondents been in fault, yet in the absence of any proof of damages to the opposite party they would still be entitled to recover the value of the work as measured by the contract, unless some smaller value was shown. *Yeats v. Ballentine.*, 56 Mo. 530 ; *Thompson v. Alloman*, 7 Mo. 530; *Dutro v. Walter*, 31 Mo. 516; *Potter v. McPherson*, 61 Mo. 240 ; *Van Buren v. Digges*, 11 How. (U. S.) 461.

5. Appellant's points on sub-letting are untenable. It is only necessary to allege the breaches complained of. 1 Sand. Plead. & Ev., 197, 200. At most it was only a matter of defense to be set up by defendant, and he having consented to and requested the sub-letting is estopped from setting up his own act as a defense. *Ritter v. Sun Mut. Ins. Co.*, 40 Mo. 40. Proof of waiver such as this is not proof of change of contract, but of performance. *St. Louis Co. v. Kyle*, 11 Mo. 278. So as to the objection that the contract was under seal and its terms cannot be waived by parol. *Pratt v. Morrow*, 45 Mo. 407; *Dearborn v. Cross*, 7

Cow. 48; *Lattimore v. Harsen,* 14 Johns. 330; *Fleming v. Gilbert,* 3 Johns. 528; *Smith v. Gugerty,* 4 Barb. 614.

6. The objection that the work could only be suspended on written orders of engineers, is without merit. That provision of the contract must be construed in connection with the other provisions; such as payment of monthly installments, the making of estimates, &c. It pre-supposes that the other provisions of the contract are also performed.

Napton, J.—This suit was brought to recover the value of certain work performed by the plaintiffs, under a contract with defendant, and to understand the points made against the verdict and judgment for the plaintiffs, under instructions from the court, I insert from the abstract a copy of the contract.

*Contract for Construction of the Chicago & Atlantic Railway :*

Made at Kenton, Hardin county, Ohio, by and between William Miller, of the first part, and H. F. Bean and J. W. Alsop, of Marion, Ohio, of the second part, witnesseth : That for and in consideration of the payments and covenants hereinafter mentioned, to be made and performed by the said William Miller, the said party of the second part doth hereby covenant and agree to construct and finish in the most substantial and workmanlike manner, to the satisfaction of the engineer of the Western Railway Construction Company, all work awarded to said party at the prices affixed, to be finished in compliance with the accompanying specifications.

*Second,* The engineer of the Western Railway Construction Company, or an assistant by his direction, shall, as soon as practicable, after the end of each month, make out an approximate estimate of the quantity and value of each species of work done, pursuant to this contract, at the prices affixed ; he shall also include the value of any extra work caused to be done by him ; and it is mutually

agreed that the prices decided upon by the engineer shall be final and conclusive for all extra work.

*Third,* Within fifteen days after the return of said estimate, 85 per cent. of the sum appearing to be due for work performed since the preceding estimate, shall be paid to the party of the second part.

*Fourth,* Within thirty days after the work shall have been completed and accepted by the engineer, a final estimate therefor shall be made, and the amount appearing due from accrued percentage and otherwise, shall be paid to the party of the second part.

It is mutually agreed between the parties to this contract, that the work herein embraced, shall be commenced within ten days after this date, and that it shall be steadily prosecuted without intermission with such force as shall, in the opinion of the engineer, secure its final completion on or before—the first five miles to be done October 15th—the other seven to be finished in time for iron, unless prevented or delayed by written orders from the engineer, and in case of such delay an extension of an equal number of days will only be allowed, and at the end of which time it shall be fully completed and given up.

And it is further agreed, that if at any time the party of the second part shall refuse or neglect to prosecute the work with a force sufficient, in the opinion of the engineer, for its completion within the time above specified in this agreement, then, and in that case the engineer, or such other agent as he may designate, may proceed to employ such a number of workmen, laborers, and overseers as may, in the opinion of said engineer, be necessary to insure the completion of the work, in the time specified, at such wages as he may find it necessary or expedient to give, pay all persons so employed and charge over the amount so paid to the party of the second part, as for so much money paid said party on this contract; or the said engineer may, at his discretion, for the failure to prosecute the work with an adequate force necessary, in the opinion of the engineer,

to complete the work by the time specified, or for the non-compliance with his directions in the manner of construct-ing it, or for any other omission, or neglect of the requirements of this agreement and specifications on the part of the party of the second part, declare this contract or any portion or. section embraced in it, forfeited; and the party of the first part shall be exonerated from every obli-gation thence arising; and the reserved percentage on the contract price, as well as all material furnished and work performed, and upon which no estimate or payment has been made, shall be forfeited and become the right and property of the party of the first part, and the engineer may thereafter agree with any person or persons for the completion of the unfinished work, or may complete the same by day's work, and the said party of the second part shall have no appeal from the opinion and decision afore-said, and he hereby releases all right to except to, or question the same in any place or under any circumstances whatever; but the party of the second part for damages occasioned by the said failure, refusal or disobedience, shall not be exonerated by the forfeiture above mentioned in case the parties of the first part should be damaged by for-feiture to a greater amount.

It is mutually agreed that at all times the engineer can have free access to the work at every point during its con-struction, for the purpose of inspection, and should any changes be made in the quantity or alignment as shown in the original plans and profiles, that no damage whatever shall be claimed by reason of such changes, and upon final settlement the amounts due for work actually done and accepted shall be paid for at schedule prices.

It is mutually agreed that the work herein contracted for shall be prosecuted in such order and with such pro-gress as the engineer shall direct, and if any circumstances not now anticipated should arise to induce said party of the first part to suspend for a time further progress on the work, the said party of the second part agrees to suspend

within ten days after receiving written notice from the engineer to do so; it being understood and agreed that the second party shall resume work when the said party of the first part are ready to do so, or the party of the first part may have option to close and settle up for the work the second party may have done according to the estimate of the engineer, which estimate shall be based upon the terms of this contract considered on the relative value of the work done as compared with the whole work herein contracted for.

It is further agreed on the part of the party of the second, part, that in the event of any suspension of the work as aforesaid, no claim shall be made for damages that may arise incidentally out of such suspension or for anticipated profits.

It is further understood and mutually agreed that the party of the second part shall not let or transfer this contract, or any part thereof, to any other person, excepting for the delivery of materials, and will give personal attention and superintendence to the work.

The said party of the first part, in consideration of the fulfillment and performance of all the stipulations in this contract by said second party, hereby agrees to pay at the office of the first party, in Kenton, Ohio, to said party of the second, for completing this contract, as follows: Upon section 1, section 2, section 3, section 4, section 5, section 6, section 7, section 8, section 9, section 10, section 11, section 12; clearing, per acre, twenty-five dollars ($25); grubbing, per acre, fifty dollars ($50); excavation, earth, per cubic yard, twenty-five cents (25c); for additional haul over 1,000 feet, fifteen mills per 100 feet per cubic yard; for all the timber cut and corded on said contract, one dollar per cord.

For the faithful performance of this contract in all its parts, we hereunto affix our hands and seals at Kenton, Hardin county, Ohio, this 20th day of August, 1873.

WILLIAM MILLER,    [SEAL.]

BEAN & ALSOP,    [SEAL.]

The following instructions were given by the court on the evidence:

1. Under the contract, it was not the duty of the plaintiffs to procure the right of way; and if you find from the evidence that the plaintiffs entered upon the performance of their part of the contract, by grubbing, clearing, grading &c., as therein stipulated, and that they were prevented from completing their part of the contract, because the right of way had not been obtained from the owners of the land through which the road ran, and where the work was to be done, who forbade and refused to permit the plaintiffs to enter and do the work, this would be a sufficient excuse for the failure of the plaintiffs to perform the work where such right of way had not been obtained.

2. If you believe from the evidence that the plaintiffs entered upon the performance of their part of the said contract, and performed work under it, according to its terms; and if you further find that the engineer, or his assistant under his directions, made out monthly approximate estimates of the work done by plaintiffs at the end of each month, which were returned and brought to the notice of the defendant, and that the defendant, upon the request of the plaintiffs, after the expiration of fifteen days from the return of any such estimates, refused and neglected to pay plaintiffs the amount due according to any such estimates, (to-wit: 85 per cent. of the amount of such estimates,) such failure or refusal of the defendant to pay was a breach of his part of the contract, and the plaintiffs were not bound to go on and complete all the work, but might suspend or quit the work until payment was made; and if you find that payment has not been made, and the work has been suspended, the plaintiffs will be entitled to recover in this suit for all work done under said contract at the rates therein stipulated.

3.   Although you may believe from the evidence that plaintiffs did sub-let a portion of the work, and that a part of the work sued for was done by sub-contractors under such sub-letting, yet if such sub-letting was done with the knowledge and consent of the defendant, by his express permission, to hasten the work, the plaintiffs are entitled to recover for all work done under said contract, so far as any defense is concerned based upon the fact of such sub-letting, and especially if the plaintiffs were to and did give the work their personal attention and oversight; and whether the defendant assented to such sub-letting or not, should be determined from all the evidence, facts and circumstances in the case ; and you are the sole judges of the evidence and credibility of the witnesses, and may give to each such credit as you may deem proper.

4.   The court instructs the jury that if they find for plaintiffs, they shall assess the amount of damages at the value of the work performed by plaintiffs, (to be determined by the terms of the contract,) and you will add interest at six per cent. per annum from the time when plaintiffs demanded; provided the money so demanded was due at the time of the demand; provided interest shall not be counted from an earlier date than May 10th, 1874; but if no demand was ever made, then plaintiffs should recover interest only from the date of the filing of this suit; that is, from October 21st, 1874.   The interest allowed in any event is to be added to the original indebtedness and returned in one aggregate sum.

5.   If you find from the evidence that the engineer, or his assistant, only made approximate estimates of the work, as stated in the petition, such estimates would not limit the recovery of the plaintiffs to the amount of work so approximately estimated; but if you find the plaintiffs, not being in fault themselves, were prevented from performing the work by the default of the defendant not paying for the work which was in consequence suspended or abandoned, and that no final or full estimate was made

of all the work done, then, and in that case, the plaintiffs can recover for the whole amount of work done by them whether estimated or not.

In addition to these instructions for plaintiffs, the court also modified certain instructions asked by defendant, and gave them as modified. These instructions are as follows :

5. If the jury believe from the evidence that the last five miles of said contract was sub-let by plaintiffs to others who did the work thereon, then the plaintiffs cannot recover in this action—[added by court]—" unless you believe from the evidence that said sub-letting was by and with the knowledge and consent of defendant."

7. If the jury believe from the evidence that defendant was contractor to build a portion of the railroad named in the contract, and that defendant sub-contracted twelve miles of it to the plaintiffs, and that the plaintiffs sub-let the whole or a part of it to others, and that such sub-contractors abandoned the work because the plaintiffs did not pay them, and if the jury believe from the evidence that the railroad company with whom Miller contracted, never received or accepted the work from him, and that defendant never accepted or used the work done by plaintiffs, then the plaintiffs cannot recover in this action—[added by court]—" unless such sub-letting was with the knowledge and consent of defendant, and the plaintiffs were prevented from proceeding with the work in consequence of the failure of the defendant to make payment on the estimates returned or demanded, as stated in the second instruction of plaintiffs."

9. That plaintiffs, for the grading done by them, if the jury find for them, can only receive 85 per cent. of the value of the work done, as provided by the contract, and at the prices fixed by the contract, and the jury cannot allow plaintiffs in this suit, for more than 11,093 cubic yards of grading done in September, 1873 ; for more than 17,519 cubic yards of grading for October; 5,521 cubic yards of grading for November; 832 cubic yards of grading for

December; 525 cubic yards of grading for January, 1874; 3,867 cubic. yards of grading for February and March, 1874; 17 $\frac{8364}{10000}$ acres of clearing; 2 $\frac{595}{1000}$ acres of grubbing, at the prices named in said contract—[added by court]— "unless you find that the plaintiffs were prevented from proceeding with the work by the failure of the defendant to make payment as required by his contract, and the work was in consequence suspended and abandoned without the fault of plaintiffs, and in that case they may recover for all work done."

Without detailing the evidence in this case which clearly supported, indeed I may say, required the verdict rendered by the jury, the points of objection in the circuit court and here, may be readily inferred from the instructions which we have copied. The decision now of each one and all of them would only require a reference to former decisions of this court, most of which may be found reviewed in the recent case of *Yeats v. Ballentine*, 56 Mo. 533. We are all of opinion that these instructions were substantially correct, and the judgment will, therefore, be affirmed.

AFFIRMED.