Argued May 22, affirmed September 24, 1918.

# FRANCONI *v.* GRAHAM.

## (174 Pac. 548.)

**Work and Labor—Quantum Meruit—Issues—Rescission.**

1. Contention that complaint, based on *quantum meruit* and showing there was written contract, is fatally defective for absence of allegation of rescission, is untenable, where answer pleads abandonment of contract by plaintiffs, and reply admits same and justifies it; allegations sufficiently raising issue of rescission.

**Appeal and Error—Harmless Error—Evidence.**

2. In action for cutting cordwood, error in admitting testimony as to reasonable value of plaintiffs' services was harmless where court evidently disregarded it, and properly adopted contract price as reasonable value of work.

**Appeal and Error—Review—Credibility of Witnesses.**

3. Supreme Court cannot go into question of credibility of witnesses.

**Appeal and Error—Review—Weight of Evidence.**

4. The Supreme Court cannot go into the question of the weight of the evidence.

**Work and Labor—Breach of Contract—Quantum Meruit.**

5. When contract for services provides for payments at specified intervals, and installments are not paid when due, aggrieved parties may abandon work and recover on *quantum meruit*.

**Election of Remedies—Necessity of Pleading.**

6. Prior election of inconsistent remedy by plaintiff being a bar, and therefore affirmative defense, to be available to defendants, it must be pleaded, and cannot be predicated on original complaint in evidence declaring for breach of contract, which plaintiffs amended to recover on *quantum meruit*.

**Work and Labor—Prior Breach by Plaintiffs—Effect.**

7. Where contract for cutting cordwood provided plaintiffs should have 1,200 cords cut by March 1st, and they failed to comply, but defendants did not object, in plaintiffs' action for services after defendants' subsequent breach, plaintiffs can recover.

**Costs—Services of Interpreter.**

8. Section 855, L. O. L., requires intervention of interpreter in case where witness does not understand English language. An item in judgment for services of interpreter under such circumstances was proper as a necessary disbursement.

[As to the proper method of examining a witness through an interpreter, see note in Ann. Cas. 1912B, 726.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

The complaint upon which this action was tried in the lower court is labeled ''second amended complaint,'' and contains two counts. The first of these alleges that between the first day of November, 1916, and the twentieth day of April, 1916, the plaintiffs, at the special instance and request of the defendants, rendered services to defendants which consisted of cutting and piling 1,481¾ cords of firewood, and that such services are reasonably worth the sum of $1,259.49; that $621.78 has been paid thereon, leaving a balance due of $637.71 for which judgment is asked.

The second cause of action pleads a written contract between plaintiffs and defendants for cutting the wood, from which it appears that it was agreed that whenever plaintiffs had cut and piled 200 or more cords of wood, the defendants should, upon notice of the fact, proceed at once to measure and receive such installment and pay plaintiffs 75 per cent of the amount due thereon, withholding the remainder until the completion of the work under the contract. It is then alleged that on April 9, 1916, plaintiffs notified defendants that they had more than 200 cords of wood ready for measurement and acceptance, and demanded that it be measured; that defendants neglected to measure or pay for the same in accordance with the terms of the contract; that defendants were again notified about April 16th, but still neglected and refused to comply with the terms of the agreement, and that on or about April 20th, being unable to maintain their camp, for want of the money then due them, plaintiffs abandoned the work. They then aver that

if they had not been compelled, by the default of defendants, to abandon the work, and had completed the same, they would have been entitled to receive therefor the sum of $2,040; that they have been paid thereon the sum of $621.78, and in order to receive the balance of $1,418.22, they would have been obliged to expend $320. They therefore pray judgment on their second cause of action in the sum of $1,098.22, as anticipated profits.

Defendants answer the first cause of action by a general denial and affirmatively rely upon the written contract mentioned in the complaint, and allege:

"That in April, 1916, the plaintiffs, without cause or justification, willfully and deliberately broke and repudiated the said contract, and refused to further perform the terms thereof. At the time of such repudiation by the plaintiffs, the said contract was in large measure unperformed, and the plaintiffs in order to perform, were still required to cut and pile upwards of 920 cords of wood; that the breach of said contract by the plaintiffs greatly damaged the defendants. That defendants paid to the plaintiffs all that the plaintiffs were entitled to receive, and all that defendants justly owed to the plaintiffs; and that plaintiffs have been fully paid for whatever work and services they rendered under and by virtue of the said contract, Exhibit 'A.' "

Answering the second cause of action, defendants again appeal to the written contract, alleging that they never refused to measure or accept the wood; that all of it was then measured and accepted except about 60 cords, which was not piled near the rest, and was inconveniently located, so defendants proposed to accept the measurements or estimates of plaintiffs, subject to future adjustment. It is then averred that prior to the time when the last quantity of wood was

measured, plaintiffs had decided to quit and repudiate their contract, and at the time of the measurement they informed defendants that they were quitting and demanded full payment for all wood cut, refusing defendant's offer of the percentage due under the contract. These allegations are followed by a counterclaim in which it is alleged that in April, 1916, plaintiffs, without any cause or justification, repudiated the contract and ceased to perform their part thereof, for which breach they ask for damages in the sum of $750.

A reply was filed, in which plaintiffs reiterate the allegations of the complaint regarding the neglect of the defendants to measure, accept, and pay for the wood cut and piled in April. Upon the trial, defendants called upon plaintiffs to elect as to which of their causes of action they would rely upon, assuming them to be inconsistent, and plaintiffs thereupon abandoned their second cause of action.

The case was tried without a jury and there was a judgment for plaintiffs, from which defendants appeal.

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Clark, Skulason & Clark,* with an oral argument by *Mr. M. H. Clark.*

For respondent there was a brief and an oral argument by *Mr. George L. Masten.*

BENSON, J.—1. The first assignment of error challenges the sufficiency of the complaint, upon the theory that since the complaint is based upon *quantum meruit,* and it appears from both complaint and reply that there was a written contract, the absence of an allegation of rescission renders the pleading fatally

defective. This contention is not tenable, since the answer pleads the abandonment of the contract by plaintiffs and the reply admits the same and justifies it by pleading the failure of the defendants to measure, receive and pay for the wood in accordance with the terms of the contract. These allegations sufficiently raise the issue of rescission so far as it may be of importance herein: *Crown Cycle Co.* v. *Brown,* 39 Or. 285 (64 Pac. 451).

2. The next three assignments are directed to the alleged error of the court in admitting the testimony of certain witnesses as to the reasonable value of the services rendered by plaintiffs. It is needless to discuss the questions thus presented, since the court evidently disregarded all of it, and very properly adopted the contract price of the work as the reasonable value thereof, and the error, if any, was harmless: *West* v. *Eley,* 39 Or. 461 (65 Pac. 798).

3, 4. At the close of plaintiffs' case defendants moved for a judgment of nonsuit on the ground that no cause of action had been established, and particularly, that there had been no proof of a rescission of the written contract. The reply alleges a breach of the contract, in that the defendants failed and refused to measure, accept and pay for a quantity of the wood cut, at the time and in the manner provided therein; that plaintiffs thereupon abandoned the work and notified defendants of the fact. So far as rescission may be a feature of this case, the pleadings sufficiently allege it. There is evidence in support of these statements in the record, and the trial court made findings in accordance therewith. This court cannot go into the question of credibility of the witnesses, or the weight of the evidence.

5. The position of the plaintiffs to the effect that when a contract for services provides for payments thereon at specified intervals and the installments are not paid when due, the plaintiffs may abandon the work and recover upon *quantum meruit* for the work already performed, is well established by the authorities: *Dobbins* v. *Higgins,* 78 Ill. 440; *Bean* v. *Miller,* 69 Mo. 384; *Grand Rapids etc. R. Co.* v. *Van Dusen,* 29 Mich. 431; *Peet* v. *East Grand Forks,* 101 Minn. 518 (112 N. W. 1003); *Dyer* v. *Middle Kittitas Irr. Dist.,* 25 Wash. 80 (64 Pac. 1009).

6. It is next urged that the action of plaintiffs in filing the original complaint herein, basing their right to recover upon the contract and its breach, and subsequently amending the same and seeking to recover upon *quantum meruit* amounts to an irrevocable election of remedies, constituting a bar to their recovery upon the latter. Whether or not it is a bar under the facts of this case, we do not decide, for the question thus presented is not made an issue in the pleadings upon which the case was tried, and the original complaint is here, simply as a matter of evidence, although for what purpose it was introduced does not clearly appear. It is not the pleading upon which the plaintiffs are relying; and since the prior election of an inconsistent remedy is a bar, and therefore an affirmative defense, we are of the opinion that to be made available it must be pleaded.

7. It is then contended that since the contract provided that the plaintiffs should have 1,200 cords of wood cut and piled by the first day of March, and that they had failed to comply therewith, therefore they were themselves in default, and consequently in no position to complain of defendants' subsequent breach of the agreement. The defendants have not pleaded this

default, and when upon the witness-stand the defendant Graham testified as follows:

"I asked him when we came to measure it up, after passing the time of the day, what he was going to do about the wood, if he didn't have the amount of wood cut. He said it remained to be seen how much wood they had cut. After we had gotten it figured up, I spoke to him again about it, only in a joking way more than anything else, and I asked him what he was going to do about the amount of wood lacking to make up that twelve hundred cords, and he said, 'What are you going to do about it? I suppose first we should see what you can do something with us,' and I passed it off by saying that we had put that in there in order to get the wood along as fast as we could; in order to get it done, and that they had done the best they could, and we were willing to let it go."

Under these circumstances the trial court very properly ignored the subject of the plaintiff's default, except that a finding was made as follows:

"That by the terms of said contract, 1,200 cords of wood were to be cut and piled by the plaintiffs on or before March 1, 1916. That the plaintiffs defaulted in the performance of these provisions of the contract and on said March 1, 1916, had cut several hundred cords less than the quantity stipulated in the contract, but neither party has ever made or now makes any claim or demand against the other because of such default."

It is also urged that error was committed in denying a judgment to defendants upon their counterclaim, but since this demand is based upon the wrongful abandonment of the work by plaintiffs, and the findings are to the effect that such abandonment was not wrongful, nothing further need be said in relation to it.

8. Defendants also appeal from the judgment of the trial court allowing an item of $5 for the services of an interpreter as a necessary disbursement. Section

855, L. O. L., requires the intervention of an interpreter in cases where the witness does not understand the English language, and the item was properly allowed.

We find no error in the record and the judgment is affirmed.                                                AFFIRMED.

BEAN, MOORE and HARRIS, JJ., concur.