Argued March 5, reversed April 8, rehearing denied May 20, 1924.

## JOHN B. ZIEGLER *v.* DAMON E. STINSON AND MAUDE A. STINSON.

(224 Pac. 641.)

**Exchange of Property—When Party may Rescind Contract for Fraud.**

1. A party to a contract for the exchange of goods, chattels or real property, who was induced to enter it by false and fraudulent representations, may at his election after knowledge of the fraud rescind the contract and recover what he has parted with, provided the parties can be restored to the position in which they stood at the time the contract was executed.

**Fraud—Rule as to Reliance on Representations Stated.**

2. A party to a contract is not justified in relying upon statements of the other party as to the facts, where, before entering into the contract, he resorts to the proper means of ascertaining the truth and verifying the statement, or if, after a representation of fact, however positive, he institutes an independent inquiry for

himself and actually learns the real facts, or if he is given a sufficient opportunity of examining into the real facts when his attention is directed to the sources of information, and he commences or professes to commence an investigation.

**Exchange of Property—Plaintiff in Making Independent Investigation of Facts Held Charged With Knowledge Investigation Would have Disclosed.**

3. Where plaintiff in exchanging property with defendant, instead of relying upon defendant's representations as to the value of the property, real and personal, the number of acres tilled, and the age and condition of horses, chose to make an independent investigation for himself and to form his own judgment concerning the same, the real facts as to which could have been discovered by plaintiff in the exercise of ordinary observation, he was charged with all the knowledge concerning them that he could have acquired had he made a thorough investigation.

**Exchange of property — Party Held to Sustain Only Nominal Damages, if Any, Where Mortgage Assumed Covered Both Realty and Personalty Instead of Realty as Covenanted.**

4. Where plaintiff in an action to rescind an exchange of property assumed an indebtedness of $4,000 on the real estate conveyed to him, and defendant covenanted that the personalty was free of encumbrances, but it developed that defendant's property was subject to two mortgages, one on the realty, the other on the personalty, but both given to secure the same debt of $4,000, plaintiff's damages, if any, were merely nominal.

**Fraud—Pecuniary Damage Essential Element.**

5. Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; but, if a pecuniary loss is shown, the court will not inquire into the extent of the injury, it being sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable.

**Exchange of Property—Misrepresentation, not Breach of Warranty, may Entitle One to Avoid Contract.**

6. A breach of warranty does not entitle one to avoid a contract of exchange, since he must sue on the breach of warranty, but a misrepresentation may entitle him to avoid contract.

**Exchange of Property—Breach of Covenant as to Freedom from Encumbrance Held Partial Failure of Consideration not Justifying Rescission.**

7. In an exchange of property in which defendant covenanted that stock and farm utensils were free of encumbrances, a breach of that covenant, in that those articles were subject to the lien of a chattel mortgage, was at most a partial failure of consideration, for which compensation could be made in damages, and hence did not justify plaintiff to rescind.

---

5. Damages for fraudulent representations inducing exchange of land, see notes in 123 Am. St. Rep. 777; 15 Ann. Cas. 458.

See 23 C. J., pp. 193, 196, 201, 212, 214, 239; 26 C. J., pp. 1161, 1162, 1167, 1171, 1183.

From Multnomah: W. N. Gatens, Judge.

Department 1.

The defendants appeal from a decree rescinding a contract for the exchange of realty. Prior to the time the contract in question was entered into the plaintiff was the owner of a house and lot in the City of Portland, which he desired to exchange for farm property, and the defendants were the owners of a farm consisting of 152 acres of land in Clatsop County, Oregon, which they desired to exchange for city property. The defendant Damon E. Stinson, who, when both defendants are not referred to, will, for convenience, be designated as the defendant, listed his said property with Kelly, a real estate broker of Portland, Oregon, and agreed to pay him a commission if an exchange of his property for city property was consummated. On May 30, 1921, Kelly caused an advertisement over his own name to be published in the "Morning Oregonian," which read as follows: "152 Acre Dairy Farm. Stocked and equipped, fine roads, all rural conveniences; in famous upper Nehalem Valley; $8,750, mortgage $4,000, equity $4,750; must trade for home here; will assume." Plaintiff saw the advertisement and visited the office of Kelly to inquire concerning defendant's property. Kelly informed him that he had never seen defendant's property and had no personal knowledge concerning the same. The plaintiff then met the defendant and procured from him a letter introducing him to defendant's wife, who was then on the farm, in order that the plaintiff might make an independent personal examination of defendant's property. Plaintiff then went to defendant's premises, presented the letter and made a personal examination of defendant's premises

and property. He then returned to Portland and notified the defendant of his willingness to negotiate for an exchange of their respective properties and at the same time the plaintiff entered into a contract with Kelly with whom he listed his own property and promised and agreed to pay Kelly a commission if an exchange of his property for that of the defendant was made. Each furnished to the other an abstract of his property and these abstracts were found satisfactory to both. Plaintiff and the defendant then entered into negotiations with each other for the exchange of their properties and mutually agreed upon the terms upon which the exchange should be made. The terms upon which they mutually agreed to exchange their properties were reduced to writing, each party receiving an unsigned copy thereof, reading as follows:

"Detail information on Exchange of Farm owned by Damon E. Stinson for West 66 2/3 feet of lots 5–6 in Block 50 Holliday's Addition to East Portland, Owned by J. B. Ziegler:

| As listed. | As listed. |
|---|---|
| 152-acre farm and stock and machinery | Lots above described |
| | Priced at $6500 |
| Priced at $8750, subject to mortgage of $4000 | Clear of encumbrance (A balance of about $150 due State Land |
| Taxes paid or to be paid | Bd. on Mortgage to |
| Interest on Mortgage to be paid to date of transfer | be paid by Mr. Ziegler. |
| Equity $4750 | |

Stock and equipment included in above price.

Mr. Ziegler to receive Difference of $1750 in a first mortgage back on said lots due in about nine months or cash instead thereof.

Final adjustments after abstracts are brought to date as follows:

| Taxes    unpaid    on | | Taxes  unpaid  on |
| Farm  ...........$ 67.00 | | lots  ..........$111.00 |
| Interest    on    Mort- | | |
| gage  to  date  .... 93.33 | | |
| A  judgment  lien... 282.92 | | |
| Costs  on  same..... 44.40 | | |
| Interest  on  same  for | | |
| 1 3/4 yr. ........ 29.69 | | |
| | | |
| | 517.34 | |
| Difference  on  adjust- | | |
| ments  ........... 111.00 | | |
| | | |
| | $406.34 | |

Mr. Stinson pays Mr. Ziegler $406.34 plus $1750 which equals $2156.34. Mr. Ziegler assuming all of the Encumbrance against said farm and Mr. Stinson receives the lots clear of encumbrance except the taxes above mentioned which he assumes. Commission to be paid to B. F. Kelly (agent for both parties) as per contract. Mr. Stinson $375, Mr. Ziegler $250.''

The foregoing statement of the terms agreed to by plaintiff and defendant, as the basis upon which the exchange of their respective properties was to be made, shows that defendant's farm and personal property was not listed as of the value of $8,750 but was listed as subject to said mortgage of $4,000 and as an equity of the value of $4,750 only. Subsequently, and on July 7, 1921, a written contract prepared by Kelly was executed by plaintiff and defendant. In pursuance of this contract the defendants delivered to the plaintiff a deed conveying their said premises to plaintiff subject to said mortgage, which mortgage plaintiff, in terms, assumed and agreed to pay, and also delivered to plaintiff a bill of sale transferring their said personal property to plaintiff. On July 9, 1921, plaintiff caused said deed to be placed of record in Clatsop County. The contract stipulated that on

the day next following its execution plaintiff and his wife would execute a deed conveying plaintiff's property to defendant and place the same in escrow in the Ladd & Tilton Bank for delivery to defendant upon defendant's paying to said bank for plaintiff said sum of $2,156.34. This sum included the sum of $367.01, which the parties stipulated was the amount of an existing judgment lien against defendant's land. It was also stipulated that defendant could pay said sum of $2,156.34 in cash or, at his election, could pay in cash the sum of $406.34 and the balance by executing and delivering to said bank for plaintiff a first mortgage for $1,750 upon the house and lot, which defendant was receiving in exchange for his farm. The contract also stipulated that the exchange of the properties should be consummated within 30 days from the date of the contract. Thereupon each of the parties surrendered to the other the possession of the property thus contracted to be exchanged, which possession they have ever since retained.

Pursuant to said contract plaintiff and his wife executed a deed conveying their house and lot to defendant and placed the deed in escrow in the Ladd & Tilton Bank with directions to deliver the deed to the defendants upon their paying to said bank for plaintiff said sum of $2,156.34, either in cash or in cash and mortgage, as provided for in the contract. Thereafter and within the thirty-day period provided for, in conformity to and in performance of the contract the defendant paid to said bank for plaintiff the sum of $406.34 and delivered to said bank a first mortgage executed by himself and wife upon said house and lot for said sum of $1,750 and demanded delivery of his deed, which was refused by the bank because of plaintiff's pretended rescission of the con-

tract. On August 3, 1921, the plaintiff, claiming that he had been defrauded by the defendant, served upon the defendant a written notice stating that he elected to rescind the contract because of the alleged false and fraudulent representations which are now set forth in the complaint, and at the same time tendered to defendants a quitclaim deed executed by himself and wife quitclaiming and releasing to defendants their right, title and interest in the real property conveyed to them by defendants. The fraud charged in the complaint consists of certain alleged false and fraudulent representations which, it is alleged, were made to plaintiff by the defendant and by Kelly as agent of defendant, which representations, it is alleged, were relied upon by the plaintiff and induced him to enter into the contract.

It is alleged in the complaint that the defendant and Kelly falsely and fraudulently represented that defendant's property was worth the sum of $8,750 and that his equity therein was worth the sum of $4,750, when in fact the property was not worth to exceed the sum of $4,000, and the equity was of no value; that the personal property was free from encumbrances, when in fact it was encumbered by a chattel mortgage for $4,000; that the real property was encumbered by a mortgage for $4,000 only, when in fact there was a judgment lien against it for $327.32; that the time of payment of the mortgage, which matured in March, 1922, would be indefinitely extended by the mortgagees if the interest was kept paid, when in fact the mortgagees refused to extend the time of payment; that the two horses upon the place were sound and not over eight or nine years of age, when in fact one

of them had the heaves, and both of them were over the age of sixteen years; that there were between twenty-one and thirty-five acres of tilled land on the farm, whereas the tilled land did not exceed fifteen acres in extent. It is also alleged that the defendant falsely and fraudulently represented to the plaintiff that the receipts from the cows had run as high as $75 per month; that the cream and eggs produced on the farm had yielded a revenue of about $50 per month; that the place was a revenue producing place; that the bill of sale contained a recital that the personal property was free from encumbrances, and this, it is alleged, was a false and fraudulent representation. The complaint alleges that the plaintiff, relying upon these representations, was induced to enter into the contract. The defendants, by their answer, deny the making of any of said representations and allege that plaintiff made a personal independent investigation for himself of the premises and property before entering into the contract and entered into the contract with full knowledge of all of the facts concerning the subject matter of the contract. This new matter was denied by the reply.

REVERSED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. A. F. Knight, Messrs. Dey, Hampson & Nelson,* and *Mr. Andrew Koerner,* with an oral argument by *Mr. A. A. Hampson.*

For respondent there was a brief and oral argument by *Mr. Charles E. Lenon.*

RAND, J.—1. The principles of law applicable to the foregoing facts are well settled. A party to

a contract for the exchange of goods, chattels or real property, who was induced to enter into the contract by false and fraudulent representations, may, at his election, after knowledge of the fraud, rescind the contract and recover back what he has parted with, provided always that the parties can be restored to the position in which they stood at the time the contract was entered into: Kerr on Fraud (5 ed.), p. 386.

2. A party, in ignorance of the true facts to whom false and fraudulent representations are made for the purpose of inducing him to enter into a contract, as a general rule is justified in relying upon the statements and is not bound to verify them by an independent investigation of his own. To entitle him to relief, either at law or in equity, it is sufficient if the representation was false and was made to induce him to enter into the contract or transaction and that he relied and acted upon it and that the misrepresentation concerned something really material, and so far affected the value or character of the subject matter of the contract that had the truth been known to him it is not probable he would have entered into the contract or engaged in the transaction. But he is not justified in relying upon a statement, says Mr. Pomeroy, "when, before entering into the contract or other transaction, he actually resorts to the proper means of ascertaining the truth and verifying the statement"; or "if, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts," or "when, after the representation, the party receiving it has given to him a sufficient opportunity

of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness.'' 2 Pomeroy's Equity Jurisprudence (3 ed.), §§ 892, 893.

It is held in this jurisdiction that the rule of *caveat emptor* applies ''where a party alleged to have been deceived by the false representations of his adversary has full means of knowing the truth, and has acted in the transaction on his own judgment.'' *David* v. *Moore,* 46 Or. 148 (79 Pac. 415); *Wimer* v. *Smith,* 22 Or. 469 (30 Pac. 416); *Cawston* v. *Sturgis,* 29 Or. 331 (43 Pac. 656).

3. The testimony shows, and it is not disputed, that the plaintiff, instead of relying upon the representations alleged in the complaint as to the value of the real and personal property, the number of acres tilled and the age and condition of the horses, chose to make an independent investigation for himself and to form his own judgment concerning the same. These things were all open, patent and visible and could have been discovered by plaintiff by the exercise of ordinary observation, and he is charged with all the knowledge concerning the same that he could have acquired had he made a thorough and complete investigation of them, as he was bound to do.

As to the alleged representations of the income which the defendants had received from the milk, cream, butter and eggs, a careful consideration of all of the testimony convinces us that these repre-

sentations, if made as alleged, were true. In justice to the defendant, it should be said that there is no clear, satisfactory or convincing testimony that the defendants ever misrepresented any fact to the plaintiff or that the plaintiff was ever misled or defrauded in the transaction. It seems to be clear from the testimony that the plaintiff was entirely satisfied with his bargain until Mrs. Ziegler, who had been employed as a cashier in the office of the "Morning Oregonian," first visited the place at the end of July, 1921, and at once became dissatisfied.

Kelly, who later became the agent of both parties, testified that during his first interview with plaintiff, he informed plaintiff that defendants' personalty was unencumbered, and the proof shows that that representation was untrue. There is no testimony, either that of Kelly or of anyone else, that the defendant ever expressly or tacitly authorized Kelly to make any such statement. At the time Kelly made that statement he informed the plaintiff that he had no personal knowledge of his own and the evidence clearly discloses that in making the statement Kelly was acting innocently. If it can be said that at the time Kelly made said statement he was acting in the business of the defendant and within the scope of his authority, his declaration would be the declaration of his principal, and if plaintiff relied upon the statement and was misled to his injury, the fact that the statement was made by Kelly might afford the plaintiff ground for relief, even though the defendant himself was ignorant of the fraud and free from all moral guilt: Kerr on Fraud (5 ed.), 407.

4, 5. It also appears that Kelly prepared all of the instruments effecting the exchange of properties,

including the bill of sale, and that the bill of sale so prepared by Kelly was written upon a printed form of a bill of sale and contained a printed *habendum* clause, containing covenants usual to such instruments. Among these covenants was the covenant that the property transferred thereby was free from all liens and encumbrances. The defendant testified that he signed this bill of sale hurriedly and without reading the printed part, and that at the time he signed it he had no knowledge that this covenant of warranty was contained therein. There is nothing in the testimony to impute doubt upon the motives or honesty of the defendant. Plaintiff had a right to rely upon this representation without the making of any search of the records to verify it, and it is apparent that the plaintiff acquired the property believing that the personal property was unencumbered. The fact was, and it is so alleged in the complaint, that at the time the exchange was made, defendant's real and personal property was subject to the lien of two mortgages, one a real mortgage, the other a chattel mortgage, but both mortgages were given to secure one and the same debt. They were both given to secure the payment of two notes aggregating the sum of $4,000, and in each mortgage the amount of the indebtedness and the time stipulated for payment were identical in terms. By his contract, as well as by the terms of the deed, which he accepted, the plaintiff assumed this indebtedness and agreed to pay the same. Payment by him of the amount secured by the real mortgage would have operated to satisfy and discharge the lien of both mortgages. Plaintiff was, therefore, not required to pay any greater amount than the amount assumed or to pay that amount at

any different time than that contracted for. There is no evidence to show that the plaintiff has ever been disturbed in his possession of the personal property. The only damage or injury he could have sustained on account of there being two mortgages, instead of one, would result solely from his inability to handle and dispose of the personalty as freely as he could otherwise have done. His damages, if any, were merely nominal and there is no allegation or proof that he sustained even nominal damages.

"Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; * * If any pecuniary loss is shown to have resulted the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable." 2 Pomeroy's Equity Jurisprudence (3d ed.), § 898.

6. As plaintiff assumed the payment of the $4,000 secured by a mortgage upon the realty, it is not reasonable to say, under the testimony offered in this case, that it is not probable he would have refused to make the exchange if he had known that the indebtedness he had assumed and agreed to pay was secured by a lien upon the small amount of personal property he was acquiring by means of the exchange. There is no evidence to show that at the time or before the entering into of the contract by plaintiff, the plaintiff ever saw the bill of sale or knew that the covenant of warranty, that the personal property was free from encumbrances, was inserted therein. The bill of sale was delivered after the contract was entered into and there is nothing to show that this covenant of warranty in any way induced the plaintiff to enter into the contract. "A breach of warranty does not entitle the

plaintiff to avoid the contract; he must sue upon the breach of warranty, but a misrepresentation may entitle the plaintiff to avoid the contract." Kerr on Fraud (4 ed.), p. 7.

7. The fact that some of the stock and farm utensils on the place were subject to the lien of a chattel mortgage is at most a partial failure of consideration for which compensation can be made in damages and which accordingly does not discharge the entire contract. The rule is stated as follows:

"A partial failure of consideration does not operate as a discharge of the entire contract if compensation for such breach can be made by awarding damages to the adversary party and if the performance which he has received, together with such award of damages, will do substantial justice." 5 Page on Contracts (2d ed.), § 2982. See also § 2981, where it is said: "It is not the breach of every covenant of a contract that may operate as a discharge of the adversary party. To have this effect the covenant broken must be a vital term of the contract, breach of which makes performance impractical and the accomplishment of the purpose of the contract impossible. Breach of a minor and subsidiary covenant may give rise to an action for damages, but it cannot operate as a discharge."

Plaintiff's allegation that defendant falsely and fraudulently represented to plaintiff that the real property was free from all liens and encumbrances, except a mortgage for $4,000, when in fact it was subject to the lien of a judgment for $357.01, does not seem to have been made in good faith, for the writing prepared by the plaintiff and the defendant as a basis of their negotiations for an exchange of their properties, recites that there is a judgment lien for $282.92, costs on same $44.40, interest on same for one and three-fourths years, $29.69, making a

total of said sum of $357.01. The contract later entered into by the parties contains a recital to the same effect and expressly stipulated that this sum was a lien against the land. The sum of $406.34, which the contract stipulated should be paid by defendant to the bank for · plaintiff, included and was intended as a payment of this sum of $357.01.

For these reasons the decree of the lower court must be reversed and the cause will be remanded to the court below, with directions to dismiss the suit, and it is so ordered.

REVERSED AND REMANDED, WITH DIRECTIONS.
REHEARING DENIED.

McBRIDE, C. J., and BURNETT and BROWN, JJ., concur.