Argued March 13, affirmed March 28, 1974

STROUP, *Respondent, v.* CONANT, *Appellant.*

520 P2d 337

*Darrell E. Bewley,* Portland, argued the cause for appellant. With him on the brief were Mary J. Vershum and Francis F. Yunker, Portland.

*William T. Cromwell,* Portland, argued the cause for respondent. With him on the brief were Cramer & Cromwell, Portland, and Robert H. Hollister, Beaverton.

TONGUE, J.

This is a suit to rescind a lease of space in a building in which the tenant undertook to operate the "Birds & Bees Adult Book Store." Plaintiff's complaint alleged that she was induced to enter into the lease in reliance upon the false representation by defendant that he intended to use the leased premises for the sale of watches, wallets, chains, novelties and a few books and magazines and imported items. Defendant appeals from a decree rescinding the lease. We affirm.

Defendant contends that there was no evidence of misrepresentation, reliance or damage. It thus becomes

---

* Bryson, J., did not participate in this decision.

necessary to summarize the evidence, although not in completely unexpurgated form.

Defendant states in his brief that he informed plaintiff of his intent to sell "a variety of items," including magazines, "for adults only." Plaintiff, however, denies any such conversation. Plaintiff's son, who represented her in negotiating the lease, testified that defendant called him by telephone in response to a newspaper advertisement for lease of the premises, located on S.E. Division Street in Portland; that he asked defendant what his business was and was told that defendant intended to conduct "a variety type operation" and to sell watches, wallets, chains, trinkets and a few books and novelties, but did not say that he intended to operate an "adult book store" or to sell pornographic material.

Plaintiff's attorney then prepared a one year lease, with an option to renew for one additional year. The lease provided, among other things, that the premises were to be used "for the sale of gifts, novelties, etc." Defendant then went to the lawyer's office and signed the lease. He was not present when plaintiff later signed the lease. The lease, as thus executed, was dated March 25, 1973.

On April 6, 1973, plaintiff's son received a telephone call from another tenant who operated a gun shop in the same building complaining that "you've ruined me" and informing him of the adult book store in the adjacent premises. Plaintiff testified that her son had reported to her that the premises had been rented for a variety and gift store and that she would not have signed the lease if she had known of defendant's intent to operate an adult book store on the premises. Upon visiting the premises, plaintiff's son

found large signs in the store windows, and upon going inside he saw no watches, wallets, chains or novelties for sale, but only racks of pornographic magazines and books. He then called plaintiff's lawyer.

During the next few days one of the residents in the neighborhood, after going into the store and purchasing three magazines whose titles had best be left unstated, circulated a petition of "protest" upon which he secured 300 signatures in the neighborhood, which he described as "predominantly residential." The two other tenants in the building, the operators of a meat market and a paint store, also complained to plaintiff that the adjacent adult book store "spoils their business," and plaintiff was "deluged" with telephone calls.

On April 10, 1973, plaintiff's attorney wrote a letter to defendant charging him with violating the terms of the lease and demanding that he vacate the premises immediately. At that time, however, plaintiff did not tender the return of the first and last months' rent, as previously paid by defendant, claiming that she was entitled to that money.

On May 4, 1973, after defendant had apparently refused to move out, plaintiff filed a complaint seeking to rescind the lease and offering to "do complete equity and restore the status quo." Defendant filed a general denial and awaited trial, which was held on August 8, 1973.

Plaintiff then offered testimony of the foregoing facts. Defendant, in addition to testifying that he informed plaintiff by telephone of his intent to operate an adult book store (which she denied), stated that it "would be pretty hard to describe over a phone." He also testified that he didn't "have anything pornographic," and that although his literature was "devoted

to various states or types of sexual activity * * * there is a lot of reading that is written by doctors." Defendant agreed, however, with the observation by the learned trial judge, that in talking about adult books he was "not talking about Charles Dickens or Thomas Wolfe." Upon examination of the pictorial "literature" offered in evidence it appears that this may well have been the understatement of this permissive age. Defendant also said that he exhibited moving pictures, presumably in "living color."

■ Based upon this record we have no hesitation in holding that there was ample basis to support the decision by this trial court in its decree rescinding this lease, dated September 17, 1973.

Even assuming that one who seeks to rent premises for the operation of such an "adult book store" and who does not disclose the nature of his intended operation may, by remaining silent, be able to acquire a binding lease from either an unsuspecting or a willing landlord, regardless of neighborhood protests, this is not such a case.

In *Heise et ux v. Pilot Rock Lbr. Co.*, 222 Or 78, 89-90, 352 P2d 1072 (1960), this court stated the following rule:

> "* * * Not only [are] affirmative misrepresentations * * * a basis for an action based upon fraud * * *; half-truths and concealment of special knowledge [may also provide such a basis] when there is a duty to speak, and [one] undertaking to speak fails to tell or conceals the truth. When the purchaser undertakes to answer inquiries, he must tell the truth, and concealment under such circumstances is fraudulent. * * *"

There was ample evidence of misrepresentation by "half-truths and concealment of special knowledge"

in this case, as well as reliance thereon by plaintiff, despite defendant's testimony to the contrary.

■ As for defendant's contention that plaintiff failed to show that she suffered any damage so as to entitle her to rescind the lease, we have previously held that proof of pecuniary damage is not a requirement for rescission. Thus, in *Furtado v. Gemmell,* 242 Or 177, 184, 408 P2d 733 (1965), we said:

> "In a suit for rescission based on misrepresentation as distinguished from an action for damages it is not necessary to prove pecuniary damage. 'It is immaterial whether damage is caused.' * * *"

To the same effect, see 2 Restatement of Contracts 910, § 476, comment *c* (1932).[1]

■ And if evidence of damage is required in such a case there was ample evidence that plaintiff suffered damage not only in the form of humiliation and embarrassment, but also by the potential loss of other tenants in the event that defendant's operation had continued. Cf. *Ziegler v. Stinson et al,* 111 Or 243, 255, 224 P 641 (1924).

■■ Defendant's final contention is that plaintiff, by her letter in which she charged defendant with violating the terms of the lease and by not offering to return the rental payments, made a binding "election of remedies" which foreclosed her from seeking to rescind the lease. By her complaint, however, plaintiff offered to do equity and to restore the status quo. *Melms v. Mitchell,* 266 Or 208; 512 P2d 1336 (1973);

---

[1] Oregon cases supporting a contrary rule, including Pace v. Edgemont Inv. Co., 138 Or 32, 35, 4 P2d 633 (1931), and cases cited therein, appear to have been overruled in Furtado v. Gemmell, 242 Or 177, 183-84, 408 P2d 733 (1965).

*Federici et ux v. Lehman et al,* 230 Or 70, 73, 368 P2d 611 (1962). In any event, it is well established that such a defense cannot be raised under a general denial, as in this case, but only under a plea in abatement, which was not pleaded by this defendant. *Franconi v. Graham,* 89 Or 619, 624, 174 P 548 (1918).

For these reasons we affirm the decree of the trial court.